| | | |
|---|---|---|
| ACCIDENT FUND INSURANCE<br>COMPANY OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CUSTOM MECHANICAL<br>CONSTRUCTION, INC. and DANNY<br>COPE, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| CUSTOM MECHANICAL<br>CONSTRUCTION, INC., | ) | |
| | ) | |
| | ) | 3:16-cv-00251-RLY-MPB |
| Counter-Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ACCIDENT FUND INSURANCE<br>COMPANY OF AMERICA, | ) | |
| | ) | |
| Counter-Defendant. | ) | |
| _____ | ) | |
| | ) | |
| CUSTOM MECHANICAL<br>CONSTRUCTION, INC., | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SCHULTHEIS INSURANCE AGENCY,<br>INC. and JAMES LEE SUBLETT, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**ENTRY ON AFICA'S MOTION TO DISMISS
CMC'S AMENDED COUNTERCLAIM**

In an effort to save on annual premium, Custom Mechanical Construction, Inc. ("CMC") purchased workers' compensation insurance from Accident Fund Company of America ("AFICA") through CMC's longtime exclusive insurance agent Schultheis Insurance Agency. Schultheis allegedly conveyed to CMC that this new coverage would be "apples to apples" as compared to its previous coverage. However, when CMC submitted a claim to AFICA arising out of a job site in Kentucky, coverage apparently was more like apples to oranges because AFICA denied the claim stating that the policy did not cover claims from Kentucky. This apparent gaffe in coverage is the subject of the dispute between the parties.

AFICA brought the present declaratory judgment action maintaining that the policy does not cover claims from Kentucky. CMC counterclaimed that AFICA wrongly and unreasonably denied coverage and that Schultheis is liable for failing to procure adequate coverage. Before the court is AFICA's Motion to Dismiss, and for the reasons set forth below, the Court **GRANTS** AFICA's Motion.

I.      **Background[1]**

CMC is a mechanical contractor that was formed in 2005 under the laws of the State of Indiana. (Filing No. 37, Amended Counterclaim ¶¶ 4, 8). Its principal place of business is in Evansville, Indiana. (*Id.* ¶ 4). CMC is authorized to transact business in

---

[1] The facts are in the light most favorable to CMC. *See Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014).

Kentucky, and since 2006, many of its projects have been located in Kentucky. (*Id.* ¶¶ 9-10). Dating back to its formation in 2005, CMC has utilized Schultheis as its exclusive agent to procure all of its insurance. (*Id.* ¶ 11). CMC relies on Schultheis to procure and maintain the specific types of insurance coverage necessary for the operation of its business. (*Id.* ¶ 32). Given the nature of construction services provided by CMC, it is necessary to maintain workers' compensation coverage in all of the states where it performs services. (*Id.* ¶ 13).

Schultheis first procured workers' compensation insurance for CMC through Praetorian Insurance Company, and CMC maintained this policy (the "Praetorian Policy") from 2006 until October 24, 2015. (*Id.* ¶ 12). To the best of CMC's knowledge, the Praetorian Policy provided coverage in Kentucky. (*Id.* ¶¶ 12, 16, 26). Prior to the renewal of the Praetorian Policy, Lee Sublett, CMC's primary agent at Schultheis, began soliciting new quotes from other workers' compensation carriers. (*Id.* ¶¶ 14, 15, 20). One of these quotes was through AFICA. (*Id.* ¶ 14). AFICA's quote was three thousand dollars cheaper than what CMC was paying under the Praetorian Policy. (*Id.*). Eventually, coverage was bound through AFICA. (*See id.* ¶¶ 14, 17).

AFICA issued a temporary workers' compensation policy for CMC with an effective date of May 15, 2016 lasting through October 24, 2016 (the "Temporary Policy").[2] (*Id.* ¶ 20). CMC was led to believe that the coverage provided as between the

_____

[2] The Amended Counterclaim is not clear as to what policy, if any, was in place between October 24, 2015, the date of expiration of the Praetorian Policy, and May 15, 2016, the beginning date of the Temporary Policy.

Praetorian Policy and the Temporary Policy was "apples to apples." (*Id.* at ¶ 18). CMC never requested that Schultheis cancel its workers' compensation coverage in Kentucky. (*Id.* ¶ 16). However, neither Schultheis nor AFICA requested that CMC complete an application prior to the placement of coverage. (*Id.* ¶ 18).

After the Temporary Policy was issued, Sublett met with the owners of CMC on a number of occasions about a permanent policy. (*Id.* ¶ 27).[3] In these meetings, the owners specifically discussed projects in Kentucky. (*Id.* ¶ 21). They also provided Sublett with several hypothetical scenarios in an effort to better understand the bounds of their coverage. (*Id.* ¶ 28). Sublett did not explain that coverage had changed or that the AFICA policy would not cover CMC for workers' compensation claims in Kentucky. (*See id.* ¶ 17). Sublett advised that CMC had adequate insurance coverage. (*Id.* ¶ 30).

However, on October 12, 2016, before a permanent policy was issued, Danny Cope was injured while working for CMC on a project in Mayfield, Kentucky. (*Id.* ¶¶ 19, 33-38). He was completing a task in a scissor lift when the lift was unexpectedly struck by a piece of a trough. (*Id.* ¶ 37). The lift tipped over, and Cope fell with it. (*Id.*). The fall resulted in Cope sustaining several bruises, lacerations to the head, and fractures of the neck, back, ankle, foot, pelvis and elbow. (*Id.* ¶ 38).

CMC reported its claim to Schultheis on October 17, 2016. (*Id.* ¶ 41). On November 4, 2016, Sublett instructed CMC to fabricate its records regarding Kentucky projects so that Cope's claim would apparently fall within the Temporary Policy. (*Id.* ¶¶

---

[3] It appears that CMC's ownership changed sometime between May 5, 2015 and Oct. 5, 2016. (*Id.* ¶¶ 19, 27).

47, 48). Concerned, CMC spoke with Sublett's superior, Brett Schultheis, who advised

CMC not to alter its records and stated that he believed AFICA would cover the claim.

(*Id.* at ¶¶ 49-50). AFICA formally denied coverage on November 11, 2016. (*Id.* ¶ 52).

Cope filed his workers' compensation claim with the Kentucky Department of

Workers' Claims on November 17, 2016, and that action is currently still pending. (*Id.* ¶

55). AFICA filed the present action on December 29, 2016. CMC filed its Amended

Counterclaim on April 14, 2017. AFICA now moves to dismiss all of CMC's claims.

## II.     Discussion

CMC advances five claims against AFICA in its Amended Counterclaim: (1)

negligence; (2) breach of contract; (3) bad faith; (4) a violation of the Kentucky Unfair

Claims Settlement Practices Act, K.R.S. § 304.12-230 *et seq.*; and (5) a violation of the

Kentucky Consumer Protection Act, K.R.S. § 367.110 *et seq.* AFICA moves to dismiss

each claim under Rule 12(b)(6).[4]

### A.     Legal Standard

Rule 12 authorizes the court to dismiss a complaint for "failure to state a claim

upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint that does not

plead "enough facts to state a claim to relief that is plausible on its face" will be

dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

---

[4] Because AFICA's Motion to Dismiss addresses the claims in a different order, the court's discussion of the claims parallels the Motion to Dismiss and not the Amended Counterclaim.

*Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Although a court

must accept all factual allegations as true and draw all inferences in favor of the

nonmovant, it need not accept legal conclusions.  *Lodholtz v. York Risk Servs. Grp., Inc.*,

778 F.3d 635, 639 (7th Cir. 2015).

> **B.**      **Choice of Law**

CMC asserts in its Amended Complaint that Kentucky law applies because the

project site (on which Cope was working when he suffered his injuries) is located in

Kentucky.  AFICA responds that Indiana law applies because the dispute between the

parties concerns the interpretation of a contract formed in Indiana, not the underlying

accident that resulted in Cope's injuries.  Curiously, CMC responds that it "does not

agree that Indiana law should apply, but because AFICA has asserted only Indiana law as

a basis for its Motion to Dismiss, CMC has responded citing Indiana law.  The choice of

law to be applied is a decision by this Court for a later time."  (Filing No. 50 at 7 n. 2).

However, the court cannot pass on the choice of law question now.  Where the law

of one state applies, claims based on the laws of another state must be dismissed.  *See*

*Sestito v. Knop*, 297 F.2d 33, 33-34 (7th Cir. 1961) (affirming dismissal of claim brought

under Michigan law where Wisconsin law applied); *see also Doe v. American Stores Co.*,

74 F.Supp.2d 855, 857, 859 (E.D. Wis. 1999) (dismissing claims based on Wisconsin

statutes where Illinois law applied).  In other words, the choice of law determination

bears on whether CMC's claims are plausible under Rule 12(b)(6).  Indeed, it would

make little sense to find that CMC has stated claims under Indiana law—the law which

CMC cites in its Response to AFICA's motion—if later the court ultimately concludes

that Kentucky law applies.  If CMC wanted the court to apply Kentucky law it needed to

respond to AFICA and brief the issue.  CMC did not do that. Accordingly, the court finds

that CMC has waived the issue and will apply Indiana law.  *Ennin v. CNH Industrial

America, LLC*, No. 17-2270, 2017 WL 6602932, at *3 (7th Cir. Dec. 27, 2017).

　　　Waiver notwithstanding, the court would still apply Indiana law to CMC's

counterclaims.  The first step in a choice of law analysis is to apply the forum state's

choice of law rules.  *See Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 915 (7th Cir.

1994).  Indiana's rules for determining choice of law depend on whether the dispute is

best characterized as a contract action or a tort action.  *Compare Kentucky Nat. Ins. Co. v.

Empire Fire and Marine Ins. Co.*, 919 N.E.2d 565, 575 (Ind. Ct. App. 2010) (contract

action), *with Alli v. Eli Lilly and Co.*, 854 N.E.2d 372, 376 (Ind. Ct. App. 2006) (tort

action).  The current dispute is best characterized as a contract action because the parties

dispute whether a particular insurance policy covers certain injuries; it does not concern

the injuries themselves.  *See Travelers Ins. Companies v. Rogers*, 579 N.E.2d 1328, 1330

(Ind. Ct. App. 1991); *American Family Mut. Ins. Co. v. Williams*, 839 F.Supp. 579, 583

(S.D. Ind. 1993) ("Because this action asks the court to determine the scope of an

automobile insurance policy's coverage, Indiana's choice of law rules for contract actions

apply.").

　　　As a contract dispute, Indiana law requires the court, after consideration of all of

the relevant facts, to apply the "law of that state with which the facts are in most intimate

contact."  *Empire Fire and Marine Ins. Co.*, 919 N.E.2d at 575 (citation omitted).  The

Indiana Supreme Court has recognized that the principal location of the risk carries the

most weight.  *See National Union Fire Ins. Co. of Pittsburgh, PA v. Standard Fusee Corp.*, 940 N.E.2d 810, 814 (Ind. 2010).  Here, the principal location of the risk is Indiana.  Although the Temporary Policy could apply to any state under Item 3. C, Indiana is the only state explicitly listed under Item 3. A.  Furthermore, the insurance policy was negotiated in Indiana.  It is between an Indiana company and a Michigan company.  It was procured through an Indiana insurance agent.  Notwithstanding CMC's waiver, the court would still apply Indiana law because it finds the facts are most intimately connected to Indiana.  The court now turns to the merits.

### C.    Breach of Contract

In Indiana, "[t]he essential elements of a breach of contract claim are the existence of a contract, the defendant's breach of the contract, and damages."  *McCollough v. Noblesville Schools*, 63 N.E.3d 334, 343 (Ind. Ct. App. 2016) (citation omitted).  A party breaches a contract where it does not perform an obligation it agreed to undertake.  *Worrell v. WLT Corp.*, 653 N.E.2d 1054, 1057 (Ind. Ct. App. 1995) (citation omitted).  Contracts must be read as a whole and interpreted in a manner that effectuates the parties' intent at the time of contracting.  *Town of Plainfield v. Paden Engineering Co., Inc.*, 943 N.E.2d 904, 909 (Ind. Ct. App. 2011) (citation omitted).  A court may not rewrite clear and unambiguous language in a contract.  *Id.* at 916 (citation omitted).

CMC first alleges that AFICA breached the Temporary Policy by failing to include Kentucky as a covered state.  However, no provision *in the policy* requires AFICA to include Kentucky as a covered state.  Whether Kentucky *should* have been included may form the basis of another claim, but it cannot form a breach of contract

claim because the language of the Temporary Policy does not impose any requirement to

include certain states.  The court will not rewrite a contract imposing an obligation on

AFICA that is otherwise not present.  *See Paden Engineering*, 943 N.E.2d at 916.

CMC also alleges that AFICA breached the Temporary Policy by failing to

obtain information from CMC based on the "Privacy Policy & Disclosure Notice" section

of the Temporary Policy.  That section provides, in relevant part:

**To our customers**

Accident Fund (the "Company") does not disclose any non-public personal
information about our individual policyholders, applicants, claimants,
customers or former customers to any affiliated and any non-affiliated third
party other than those permitted by law and only for the purpose of
transacting the business of your insurance coverage or policy.

**What kinds of information do we collect and from whom?**

*The Company obtains most of its information directly from you and/or your
agent to help us serve your insurance needs*, conduct Company business,
provide customer service and fulfill legal and regulatory requirements.  We
may also review claims information and obtain medical or financial
information to adjust some claims.

**What do we do with the information collected about you?**

The information we obtain about you is kept internal to the Company except
when needed to verify the information provided, to service your policy or
claim, or as required or permitted by law.  The information is not available
to the general public.  We do not share any medical information about you
or about claimants under your insurance policy to anyone other than to
conduct our insurance business or as permitted by law.

(Filing No. 8, Temporary Policy at 10) (emphasis added).

CMC submits that the sentence, "[t]he Company obtains most of its information

directly from you and/or your agent to help us serve your insurance needs . . . ." creates

an affirmative obligation on AFICA to obtain information, namely an application, from potential customers.  That is simply not the case.  The Privacy Policy & Disclosure Notice is exactly what it purports to be: an explanation of how AFICA obtains and utilizes information from its *current insureds*.  Nothing in the Privacy Policy & Disclosure Notice requires AFICA to procure an application prior to coverage being placed nor has CMC cited any legal authority supporting its theory that a contract may be breached prior to its existence.  As the claim currently stands, CMC has failed to plausibly allege that AFICA breached the Temporary Policy.

However, while AFICA's motion to dismiss was pending, CMC alerted the court to certain audit documents it obtained through discovery from Overland Solutions, a third-party audit company who performed audits on AFICA's policies.  The court permitted CMC to file a surreply to address this "newly discovered" evidence.  (*See* Filing No. 74).  The crux of CMC's argument in its surreply is that the audit documents show that AFICA was aware that CMC was performing work in Kentucky.  The Temporary Policy covers "other states" not listed in the Temporary Policy, provided that AFICA receives notice from the insured.  (*See* Temporary Policy at 14) (the "Other States" provision).  Thus, CMC argues though not in exact terms, that if AFICA had notice of its work in Kentucky, then the Temporary Policy would cover the injuries suffered by Cope under the Other States provision.

The problem for CMC is that it never alleged in the Amended Counterclaim that the Temporary Policy, through the Other States provision, actually provided coverage for the injuries.  The allegations in the Amended Counterclaim allege that AFICA *should*

10

have issued an insurance policy that provided coverage for the injuries and that AFICA

should have obtained an application from CMC but not that the Temporary Policy

*actually* provided coverage. CMC cannot amend its pleadings through briefing. *See Car*

*Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). Therefore,

whether AFICA had notice of CMC's work in Kentucky has little bearing on its breach of

contract claim as currently pled.

However, Rule 15 permits a party to amend its pleading with the court's leave and

also explains that "[t]he court should freely give leave when justice so requires." Fed. R.

Civ. P. 15(a)(2). The Seventh Circuit has emphasized that this is a liberal standard. *See*

*Runnion ex. rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana*, 786

F.3d 510, 519-20 (7th Cir. 2015). Here, there has been no dilatory tactics nor has CMC

proceeded in bad faith. Accordingly, the court dismisses CMC's present claim for breach

of contract but will grant CMC leave to amend its counterclaim for breach of contract in

light of the audit reports received from AFICA's auditor.

> **D.     CMC's Bad Faith Claims**
>
> **1.     Common Law Bad Faith**

Indiana has long recognized that an insurer owes a duty to deal with its insured in

good faith. *See Erie Ins. Co. v. Hickman,* 622 N.E.2d 515, 518-19 (Ind. 1993). The duty

of good faith "includes the obligation to refrain from (1) making an unfounded refusal to

pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving

the insured; and (4) exercising any unfair advantage to pressure an insured into a

settlement of his claim." *Id.* at 519. An insurer breaches the duty of good faith when it

11

denies liability knowing that there is no rational, principle basis for doing so. *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002) (citation omitted). However, it has long been the rule in Indiana that an insurer can dispute whether an insured has a valid claim so long as the dispute is in good faith. *Hickman,* 622 N.E.2d at 520. Absent "a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will," a bad faith cause of action will rarely lie against an insurer. *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005) (internal quotations omitted and citations omitted).

CMC argues that AFICA acted in bad faith when it failed to obtain an insurance application directly from CMC. This allegation does not fall under any of the four grounds for bad faith under *Hickman*. Nonetheless, CMC argues that the grounds for bad faith enunciated in *Hickman* are not exhaustive, and presumably, Indiana courts would consider other examples of conduct sufficient to support a finding of bad faith. Maybe so. But CMC has not cited any legal authority that recognizes that an insurer's failure to obtain an application from an insured amounts to bad faith. Nor does it seem wise to charter new bad faith waters especially given that the Indiana Supreme Court has not expanded *Hickman* in the past 20 years. *See Telamon Corp. v. Charter Oak Fire Ins. Co.*, 850 F.3d 866, 872 (7th Cir. 2017) ("[I]t has been over 20 years since *Hickman* . . . and the list has not expanded. We see no reason to ignore the Indiana Supreme Court's apparent satisfaction with the status quo . . . ."); *see also Magwerks*, 829 N.E.2d at 976 ("[W]e decline at this time to expand on the extent of the duty an insurer owes its [insured] beyond those we have already expressed in *Hickman*."). Simply put, nothing in

existing Indiana case law suggests, let alone explicitly recognizes, that an insurer's failure

to obtain an insurance application directly from an insured—which utilizes an agent to

place its insurance—constitutes bad faith.

CMC also argues that AFICA's refusal to provide coverage amounts to bad faith

because AFICA knew or should have known that CMC sought coverage for its projects in

Kentucky. However, CMC fails to allege that AFICA was obligated to pay policy

proceeds or that AFICA acted with a "dishonest purpose, moral obliquity, furtive design,

or ill will" in its denial to pay policy proceeds. *Magwerks,* 829 N.E.2d at 977. There are

no allegations that AFICA procured insurance coverage different from what Schultheis

requested. *See Foster v. Auto-Owners Ins., Co.*, 703 N.E.2d 657, 660 (Ind. 1998)

(citations omitted) (noting insurer may rely on representations in the application without

further investigation). There are also no allegations that AFICA denied coverage

knowing that there is no rational, principle basis for doing so. *Freidline*, 774 N.E.2d at

40. Quite the contrary, AFICA has maintained that the Temporary Policy does not

provide coverage based on its plain language. AFICA is entitled to dispute coverage in

good faith. *See Hickman*, 622 N.E.2d at 520.

Presented with CMC's allegations, no rational factfinder could find that AFICA

acted in bad faith, and accordingly, CMC's claim of bad faith will be dismissed.

### 2. Kentucky Statutory Claims

In Counts Four and Five of its Amended Complaint, CMC alleges that AFICA's

conduct violated both the Kentucky Unfair Claims Settlement Practices Act, KRS

304.12-230 *et. seq.*, and Kentucky Consumer Protection Act, KRS 367.110, *et. seq.*

However, having already concluded that Indiana law applies and that Kentucky law is inapplicable, these claims must be dismissed. *See Sestito v. Knop*, 297 F.2d 33, 33-34 (7th Cir. 1961) (affirming dismissal of claim under Michigan law where Wisconsin law applied); *see also Doe v. American Stores Co.*, 74 F.Supp.2d 855, 857, 859 (E.D. Wis. 1999) (dismissing claims based on Wisconsin statutes where Illinois law applied).

Even if the court were to decide CMC's claims on the merits, the result would be the same. The test for all bad faith actions in Kentucky is as follows:

> (1) [T]he insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000) (emphasis omitted) (quoting *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993)). Kentucky recognizes that "an insurer is entitled to challenge a claim and litigate it if the claim is debatable on the law or the facts." *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 454 (Ky. 1997) (citing *Wittmer*, 864 S.W.2d at 890).

For fear of repeating the previous analysis, it is sufficient to say that not only has CMC failed to allege that AFICA was obligated to pay the claim, but it has likewise failed to allege facts that show AFICA lacked a reasonable basis in law or fact for denying the claim.

Accordingly, these claims must be dismissed.

### E. Negligence

To prevail on a negligence claim, a plaintiff must prove the familiar three

elements: "1) duty owed to plaintiff by the defendant; 2) breach of duty by allowing

conduct to fall below the applicable standard of care; and 3) compensable injury

proximately caused by defendant's breach of duty." *Ryan v. TCI*

*Architects/Engineers/Contractors, Inc.*, 72 N.E.3d 908, 913 (Ind. 2017) (citation

omitted). Whether a defendant owes plaintiff a duty is a question of law. *Id.* Indiana has

recognized that there is an implied duty in all insurance contracts that an insurer deals in

good faith with its insured. *Hickman*, 622 N.E.2d at 519.

CMC first argues that AFICA breached its duty of good faith and fair dealing to

CMC when it failed to obtain an application from CMC prior to coverage being placed.

But this argument puts the cart in front of the horse: the duty an insurer owes its insured

arises *out of the insurance policy*, so AFICA owed no duty to CMC *prior* to coverage

being placed. Moreover, CMC has failed to allege any facts to suggest AFICA owed

CMC a pre-policy duty through some other theory of negligence. *See Myers v. Yoder*,

921 N.E.2d 880, 885 (Ind. Ct. App. 2010) (recognizing special relationship could create

duty to advise insured).[5] Lastly, for the same reasons the court rejected CMC's breach of

contract claim anchored in the Privacy Policy, the court likewise rejects it here.

---

[5] There are no factual allegations that AFICA participated in the meetings with CMC's owners, that AFICA made policy representations to CMC, or that would otherwise support the conclusion that AFICA owed a duty to CMC prior to coverage being placed.

CMC also asserts that Schultheis is an agent for AFICA because Schultheis made an application for insurance and the policy was issued.[6]  Accordingly, it became AFICA's responsibility when Schultheis failed to fully ascertain the nature of CMC's interests.  While there is some support for that position, *see Aetna Ins. Co. of the Midwest v. Rodriguez*, 517 N.E.2d 386, 388 (Ind. 1988) ("[I]n Indiana when a broker makes application for insurance and the insurance policy is issued, the broker is the agent of the insurer and can bind it within the scope of his authority."), Indiana also recognizes the general rule that "an insurer is not liable for the acts of an insurance agent who is merely a broker." *Benante v. United Pacific Life Ins. Co.*, 659 N.E.2d 545, 547 (Ind. 1995) (citation omitted).  The Indiana Supreme Court has recently clarified:

> Depending on whose interests the "insurance agent" is representing, he or she may be a "broker" or an "agent." A critical distinction exists. A representative of the insured is known as an "insurance broker." As a general rule, a broker is the agent of the insured, and not the insurer. As such the insurer is not liable for the broker's tortious conduct. A broker represents the insured by acting as an intermediary between the insured and the insurer, soliciting insurance from the public under no employment from any special company, and, upon securing an order, places it with a company selected by the insured, or if the insured has no preference, with a company selected by the broker. In contrast, an insurance agent represents an insurer under an employment agreement by the insurance company. Unlike acts of a broker, acts of an insurance agent are imputable to the insurer.

---

[6] This assertion does not appear in CMC's Amended Complaint, and it is well established that a party may not amend its pleading in a response brief. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (citation omitted).  However, it is also established that a plaintiff may allege additional facts that supplement its claims. *Hrubec v. National R.R. Passenger Corp.*, 981 F.2d 962, 963-64 (7th Cir. 1992) (citation omitted).  The court has its doubts that this assertion would qualify as fitting into the latter, but given the apparent tension between these doctrines, *see Milazzo v. O'Connell*, 925 F.Supp. 1331, 1340 (N.D. Ill. 1996) ("These diametrical approaches are difficult to reconcile . . . ."); *see also Ahr v. Commonwealth Edison Co.*, No. 036645, 2005 WL 6115023, at *7 (N.D. Ill. Feb. 24, 2005) (collecting cases finding an apparent conflict), it is unnecessary to reach the issue because CMC's agency claim fails on the merits.

*Estate of Mintz v. Connecticut General Life Ins. Co.*, 905 N.E.2d 994, 1001 (Ind. 2009)

(internal quotations and citation omitted).

CMC has failed to allege facts that show Schultheis was an agent of AFICA.

There are no allegations that Schultheis sold policies only on behalf of AFICA, had a

written general agreement with AFICA, utilized AFICA's letterhead or business cards,

received training from AFICA, was authorized to unilaterally issue AFICA policies, or

represented to CMC that it was AFICA's agent.  In fact, the allegations suggest the

situation was quite the opposite.  (Amended Complaint ¶ 11) (alleging that Schultheis has

been CMC's "exclusive insurance agent since its original formation in 2005").  While

CMC is correct in asserting that agency is a fact sensitive inquiry, *Mintz*, 905 N.E.2d at

1001, and ordinarily a question of fact, *Bauermeister v. Churchman*, 59 N.E.3d 969, 974

(Ind. Ct. App. 2016), here, CMC has failed to allege sufficient facts to support an agency

finding as a matter of law.  Dismissal of its negligence claim is therefore appropriate.  *See*

*Donahue v. St. Joseph Cnty. ex rel. Bd. of Comm'rs.*, 720 N.E.2d 1236, 1241 (Ind. Ct.

App. 1999) (affirming motion to dismiss where the facts did not support an agency

theory).[7]

---

[7] Having concluded that AFICA owed no duty to CMC, the court does not reach whether the economic loss theory or CMC's alleged failure to read the Temporary Policy serve as alternative grounds to dismiss CMC's claim.

**III.    Conclusion**

CMC has failed to plausibly allege that AFICA was negligent or acted in bad faith

with respect to the issuance and coverage of the Temporary Policy.  CMC also failed to

allege that AFICA breached the Temporary Policy by failing to include Kentucky as a

state and by failing to obtain an application directly from CMC.  However, because

certain audit documents were recently discovered and they might bear on a breach of

contract claim, the court will grant leave to CMC to file a Second Amended Complaint

limited to only a breach of contract claim.  The Second Amended Complaint shall be

filed not more than five (5) days after this Entry.

Accordingly, AFICA's Motion to Dismiss is **GRANTED**.  (Filing No. 44).

CMC's counterclaims of Negligence (Count I), Bad Faith (Count III), Violation of

Kentucky's Unfair Claims Settlement Practices Act (Count IV), and Violation of the

Kentucky Consumer Protection Act (Count V) are **DISMISSED WITH PREJUDICE**.

CMC's claim of breach of contract (Count II) is **DISMISSED WITHOUT**

**PREJUDICE**.

**SO ORDERED** this 16th day of January 2018.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.

18