UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

ACCIDENT FUND INSURANCE            )
COMPANY OF AMERICA,                )
                                   )
          Plaintiff,               )
                                   )
     v.                            )     No. 3:16-cv-00251-RLY-MPB
                                   )
CUSTOM MECHANICAL                  )
CONSTRUCTION, INC., and            )
DANNY COPE,                        )
                                   )
          Defendants.              )
_____   )
                                   )
CUSTOM MECHANICAL                  )
CONSTRUCTION, INC.,                )
                                   )
          Counter Claimants,       )
                                   )
     v.                            )
                                   )
ACCIDENT FUND INSURANCE            )
COMPANY OF AMERICA,                )
                                   )
          Counter Defendants.      )
_____   )
                                   )
CUSTOM MECHANICAL                  )
CONSTRUCTION, INC.,                )
                                   )
          Third Party Plaintiff,   )
                                   )
     v.                            )
                                   )
SCHULTHEIS INSURANCE AGENCY        )
INC., and                          )
JAMES LEE SUBLETT,                 )
                                   )

1

|                              |     |
|------------------------------|-----|
| Third Party                  | )   |
| Defendants.                  | )   |

|                              |     |
|------------------------------|-----|
|                              | )   |
| LIBERTY MUTUAL INSURANCE     | )   |
| COMPANY,                     | )   |
|                              | )   |
| Intervenor Plaintiff.        | )   |

### ENTRY ON MOTIONS FOR SUMMARY JUDGMENT

While working on a clarifier in Kentucky, Danny Cope fell and suffered serious injuries.  At the time of the accident, Cope's employer, Custom Mechanical Construction, Inc., was insured under an Indiana workers' compensation policy obtained through its agent Schultheis Insurance Agency.  The policy was issued by Accident Fund Insurance Company of America.  Schultheis assured Custom Mechanical the policy would cover the claim, but Accident Fund ultimately denied the claim stating the policy did not provide coverage for work in Kentucky absent prior notice.

The dispute over coverage trickled into court.  Accident Fund and Custom Mechanical dispute whether there is coverage under the policy, and Custom Mechanical and Schultheis dispute whether Schultheis was negligent in procuring coverage and failing to properly advise Custom Mechanical.  Before the court are cross-motions for summary judgment on both issues.

The policy at issue does not provide coverage for Cope's injuries because the accident occurred in Kentucky, and Accident Fund did not have prior notice of Custom Mechanical's work there.  The question of whether Schultheis was negligent in procuring

coverage and failing to advise Custom Mechanical cannot be determined as a matter of law because a rational jury could find a verdict for either party.

## I.   Background

Most of the facts are undisputed.  Where there is a dispute, the court identifies the contested facts and construes them in the light most favorable to the nonmoving party against whom the motion is made.  *Markel Ins. Co. v. Rau*, 954 F.3d 1012, 1016 (7th Cir. 2020) (internal citations and quotations omitted).

### A.   Custom Mechanical and Schultheis Insurance

Randall Titzer and Kenneth Ernst started Custom Mechanical in 2005.  (Filing No. 1, Complaint ¶ 6; Filing No. 20, Custom Mechanical Answer ¶ 6; Filing Nos. 157-1 and 154-6, Deposition of Randall Titzer ("Titzer Dep.") at 9:2 – 6).  Custom Mechanical is a mechanical contractor in Evansville, Indiana that primarily works on jobs in Indiana. (Complaint ¶¶ 2, 6; Answer ¶¶ 2, 6; Titzer Dep. 22:16 – 25).  Although not formally registered to do business in Kentucky until 2009, Custom Mechanical has always completed jobs there.  (Filing No. 157-3, Certificate of Authorization; Titzer Dep. at 21:13 – 22:25; *see also* Filing Nos. 157-5 and 151-10, Deposition of Holly Bugg ("Bugg Dep.") at 33:7 – 24).  When performing work in Kentucky, Custom Mechanical uses both Indiana and Kentucky employees.  (Filing No. 157-4, Deposition of Kenneth Ernst ("Ernst Dep.") at 12:15 – 13:6).

Custom Mechanical has used Schultheis to procure its insurance coverage since Custom Mechanical opened in 2005. (Titzer Dep. 11:24 – 12:4). Titzer[1] chose Schultheis because Titzer had used Schultheis for his personal insurance needs and another contractor had recommended Lee Sublett, one of Schultheis's agents. (*Id.* at 5:12). After an initial meeting with Titzer, Sublett procured standard insurance coverages for Custom Mechanical, which included workers' compensation. (Filing No. 154-1, Deposition of Lee Sublett ("Sublett Dep.") at 93:3 – 94:10). Sublett met with Titzer three or four times a year to discuss coverages and make any changes if necessary. (Titzer Dep. 15:2 – 21).

### B.   Custom Mechanical's Workers Compensation Coverage

Custom Mechanical has always maintained a workers' compensation policy with primary coverage in Indiana because the majority of its jobs are in Indiana. (Titzer Dep. 22:16 – 19; 58:13 – 14). When forming Custom Mechanical, Titzer never specifically requested that Sublett procure workers' compensation in Kentucky. (Titzer Dep. 35:8 – 24). Holly Bugg, who was the Controller for Custom Mechanical and assisted with policy audits, also never requested coverage in Kentucky. (Bugg Dep. 32:23 – 33:14). Both Titzer and Bugg, however, always believed Custom Mechanical had coverage in Kentucky. (Titzer Dep. 54:6 – 22; Bugg Dep. 32:23 – 33:24).

---

[1] Ernst was not involved in determining insurance coverage for Custom Mechanical. (Filing No. 154-7, Deposition of Kenneth Ernst ("Ernst Dep.") 10:14 – 12:6).

4

In January of 2010, Custom Mechanical's workers compensation carrier at the time—Midwestern Insurance Alliance[2]—discovered through an audit that Custom Mechanical had performed work in Kentucky. (Bugg Aff. ¶ 25; Bugg Aff. at 16 – 17, Ex. 12-C, 2010 Midwestern Correspondence; Bugg Dep. 57:3 – 58:20). Midwestern contacted Bugg and asked if Custom Mechanical had opened a Kentucky location. (2010 Midwestern Correspondence). Bugg responded that Custom Mechanical did not have a Kentucky location and instead took some of its Indiana employees to complete jobs in Kentucky. (Bugg Dep. 57:3 – 58:20). Midwestern then reached out to Sublett and informed him Custom Mechanical had performed work in Kentucky. (Filing No. 154-3, Affidavit of Lee Sublett ("Sublett Aff.") Ex. 3D, Sublett Correspondence with Midwestern). The underwriter for Midwestern said that using Indiana employees to complete a job in Kentucky was fine but also highlighted that the then-current policy did not have "primary coverage" in Kentucky. (*Id.*).

More on that point. The Midwestern policy provided two types of coverage to Custom Mechanical: "primary" coverage for Indiana, and "other states coverage" for most other states. (*Id.* Ex. 3-I at 10). "All states coverage" also referred to as "other states coverage" provides coverage for temporary or incidental work outside of the primary state. (*Id.* ¶ 49). The Midwestern underwriter recommended Sublett add all states coverage so that future jobs in Kentucky would be covered. (Sublett

---

[2] The carrier was actually Praetorian Insurance Company; the servicer of the policy was Midwestern. (*See* Filing No. 151-14, Affidavit of Holly Bugg ("Bugg Aff.") ¶ 25). However, everyone has referred to Custom Mechanical's prior carrier as Midwestern, and so the court will do the same to be consistent.

Correspondence with Midwestern).  Sublett agreed, and so Midwestern added that coverage at the end of January 2010.  (*Id.* ¶¶ 49, 50).

### C.   Custom Mechanical Changes Carriers from Midwestern to Accident Fund

In 2015, around the time of the Midwestern policy renewal, Sublett began shopping different carriers for Custom Mechanical's workers' compensation coverage. (Sublett Dep. 69:20 – 70:9; Sublett Aff. ¶ 16).  Sublett obtained quotes from both Midwestern and Accident Fund and e-mailed Bugg, so that she and Titzer could compare premium prices between the two carriers.  (Sublett Aff. ¶ 53; Sublett Dep. 220:2 – 10; *see also* Sublett Aff. Ex. 3-F).  In the e-mail, Sublett explained Accident Fund was a good company and its policy premium was roughly $2,600[3] cheaper than Midwestern.  (Bugg Dep. 128:6 – 14; *see also* Filing No. 157-13, E-mail from Sublett to Bugg at 2).  He recommended Custom Mechanical go with Accident Fund.  (E-mail from Sublett to Bugg at 2).  The only thing Bugg compared between the two quotes were the premium rates. (Bugg Dep. 129:10 – 16).  The Accident Fund quote stated it was "pleased to present your Workers' Compensation Insurance coverage in the state of IN."  (E-mail from Sublett to Bugg at 10).  Bugg did not pay much attention to this language because Custom Mechanical had always done work in Kentucky and because Titzer and Bugg believed coverage existed in Kentucky.  (Bugg Dep. 130:10 – 23).  Bugg also believed coverage existed based on conversations with Sublett.  (*Id.* at 130:21 – 23).

---

[3] Bugg stated in her deposition the amount was $2,300, but the e-mail shows the amount was $2,600.

Titzer ultimately decided to switch coverage from Midwestern to Accident Fund. (Bugg Dep. 130:24 – 131:3).  Bugg sent Sublett an e-mail stating "Randy is on board for going with Accident Fund" and told Sublett to "do what you have to do to switch our carrier."  (Filing No. 154-3, Ex. 3G at 1, E-mail from Bugg to Sublett).  Sublett then completed an application for workers' compensation insurance with Accident Fund. (Sublett Dep. 82:3 – 86:4; *see also* Filing No. 157-14, Accident Fund Application for Insurance at 2 – 5).  Sublett prepared the application himself: no one from Custom Mechanical reviewed or signed the application.  (Sublett Dep. 82:15 – 83:6).  Sublett selected "Indiana" as the state of insurance.  (*Id.* at 84:12 – 85:14).  In response to the question "[d]o employees travel out of state?", Sublett responded "no".  (Accident Fund Application for Insurance at 4, Question Number 14).  Accident Fund approved Sublett's application and issued a policy providing coverage for the period of October 24, 2015 through October 24, 2016 ("First Policy").  (Filing No. 157-11, Deposition of Theresa Miller ("Miller Dep.") at 95:11 – 96:5; Sublett Aff. at 31 – 54, Ex. 3-H, First Policy).

### D.   Custom Mechanical Changes Ownership

In March of 2016, Kevin Short and Carl Cole started working at Custom Mechanical with the intention of eventually purchasing the company.  (Filing Nos. 157-16 and 154-12, Deposition of Carl Cole ("Cole Dep.") at 10:12 – 25).  At the time, both Short and Cole knew Custom Mechanical performed work in Kentucky.  (*Id.* at 12:23 – 13:24; Filing Nos. 157-16 and 154-13, Deposition of Kevin Short ("Short Dep.") at 12:5 – 19).  In fact, Short hoped to expand work in Kentucky.  (Short Dep. 70:23 – 71:13).

Once Sublett learned Cole and Short wanted to purchase the company, he met them in April of 2016 to introduce himself and to discuss the transition with respect to insurance coverage.  (Short Dep. 18:4 – 19:18; Cole Dep. 16:23 – 17:15).  During the meeting, Short and Cole told Sublett that Custom Mechanical would operate the same as it had under the prior owners.  (Short Dep. 18:8 – 16; Cole Dep. 23:21 – 24:14).  They also told Sublett they wanted to keep the same insurance policies in place.  (Short Dep. 18:8 – 16).  After their meeting, on May 12, 2016, Sublett submitted a notice of change of ownership to Accident Fund.  (Sublett Dep. 73:2 – 74:23).

Short and Cole purchased the stock of CMC on May 13, 2016.  (Titzer Dep, 42:18 – 25; Short Dep. 19:19 – 20:5).  The day before, Sublett's assistant, Marilyn Robinson, contacted Accident Fund and explained an ownership change would take place on May 13, 2016.  (Filing No. 151-6, Declaration of Lee Sublett ("Sublett Dec."), Ex. 5-1, Correspondence between Schultheis and Accident Fund at 7).[4]  Since a "material change in ownership" had occurred, Accident Fund explained they could not amend the existing policy (the First Policy) but instead would have to issue a new one.  (*Id.* at 6 – 7).  Robinson responded:

> "[] I am sure we will want to apply for a new policy for the new owners with the coverage backdated to 5/13/16. [Sublett] is out of the office [and will contact you soon].

---

[4] Both Custom Mechanical and Schultheis have submitted an affidavit from Sublett.  Since there are differences in the affidavits, the court refers to the affidavit submitted by Schultheis (Filing No. 154-3) as Sublett's "Affidavit" and the one submitted by Custom Mechanical (Filing No. 151-6) as Sublett's "Declaration."

8

(*Id.* at 6).  When Sublett returned to the office, he requested Accident Fund transfer the First Policy to Short and Cole, rather than do a cancel and re-write.  (*Id.* at 3; *see also* Sublett Dep. 73:2 – 74:23).  Accident Fund, however, denied his request. (Correspondence between Schultheis and Accident Fund at 2).  Accident Fund's practice when a company changes ownership is to cancel the old policy and issue a new one rather than transfer the old one.  (*Id.* ("[I]t is our practice at Accident Fund to do a cancel and rewrite of a risk when an ownership change such as [this] takes place.")); *see also* Miller Dep. 61:2 – 20).  Accident Fund agreed to write a new short-term policy with a beginning date of May 13, 2016 and a renewal date of October 24, 2016—the same renewal date as the First Policy.  (Correspondence between Sublett and Accident Fund at 1).

**E.    The Second Policy**

Sublett applied for the new policy on June 1, 2016.  (Sublett Dep. 52:14 – 53:25). When asked whether Custom Mechanical's employees travel out of state, Sublett again checked "no".  (Filing No. 157-18, Second Insurance Application at 4).  Accident Fund issued a new policy (the "Second Policy") later that day.  (Sublett Aff., Ex. 3-K, Second Policy at 1 – 24; Miller Dep. 95:11 – 96:5).

The Second Policy contained a policy period from May 13, 2016 to October 24, 2016.  (Second Policy at 6).  Accident Fund backdated the policy from June 1 to May 13 at Robinson's request with Sublett's agreement.  (*See* Correspondence between Schultheis and Accident Fund at 1 – 7).  Accident Fund, however, encountered difficulties backdating the policy because its system would not allow backdating a policy more than ten days.  (*See id.*; *see also* Miller Dep. 64:13 – 69:14).  It had to override the system to

backdate the policy; this process took a little more than a week and resulted in the issuance of an incorrect notice of cancellation.  (Miller Dep. 64:13 – 69:14; *see also* Sublett Dec., Ex. 5-K, June 6, 2016 Notice of Cancellation).  Eventually, Accident Fund issued a correct notice of cancellation as to the First Policy on June 12, 2016.  (Sublett Dec., Ex. 5-L, June 12, 2016 Notice of Cancellation).

The Second Policy covers accidents in Indiana ("primary coverage").  (Second Policy at 6, Item 3A).  The Second Policy also affords coverage in other states through an "other states" provision ("other states coverage").  (*Id.* at 6, Item 3C).  Similar to the provision in the prior Midwestern policy, other states coverage applies to work performed in other states provided certain notice requirements are met.  (*Id.* at 14, Part Three).  The notice provision requires Custom Mechanical to provide notice to Accident Fund within thirty days of the effective date of the policy if it has work in another state, or "at once" if it begins work in another state.  (*Id.*).

Neither Short nor Cole read the Second Policy.  (Short Dep. 36:21 – 37:8; 39:1 – 20; Cole Dep. 40:22 – 41:7).  Nor did they specifically ask Sublett to procure coverage for Kentucky because they assumed Custom Mechanical already had coverage there.  (Short Dep. 12:5 – 19; Cole Dep. 29:5 – 30:8).

As of May 13, 2016, Custom Mechanical was performing work in Kentucky.  (Titzer Dep. 43:1 – 5; Short Dep. 41:16 – 22; Bugg Dep. 137:4 – 8).  Custom Mechanical continuously performed work in Kentucky after that date.  (*See* Filing No. 157-20, Custom Mechanical's Kentucky Job Chart) (explaining Custom Mechanical had performed work in Kentucky on thirty-one different days between May 13 and October

10

24).  Neither Short nor Cole provided notice to Accident Fund that Custom Mechanical was performing work in Kentucky.  (Cole Dep. 53:20 – 54:1; Short Dep. 43:2 – 44:14).  Sublett did not provide any notice to Accident Fund either.  (Sublett Dep. 228:19 – 230:21).

### F.    Accident and Investigation

Prior to the sale of the company, Custom Mechanical had submitted a bid on a water clarifier rehabilitation project at the Pilgrim's Pride manufacturing plant in Hickory, Kentucky.  (Ernst Dep. 22:2 – 23:21; Cole Dep. 60:13 – 61:17; Short Dep. 49:16 – 22).  Custom Mechanical was awarded the project in September of 2016.  (*See* Short Dep. 49:25 – 14).  Work began on October 12, 2016.  (Short Dep. 54:2 – 6; *see* Custom Mechanical's Kentucky Job Chart).  Because the project was relatively large, Custom Mechanical hired labor from the Kentucky union to assist.  (Cole Dep. 62:10 – 23; 73:23 – 74:5).  One of these laborers was Danny Cope.  (Bugg Dep. 133:11 – 12; Sublett Aff. ¶ 69).

Four days after work began on the Pilgrim's Pride project, on October 16, Cope fell and suffered severe injuries.  (Short Dep. 52:17-54:9; Sublett Aff. ¶ 69).

The following day, on October 17, Custom Mechanical reported the injury to Sublett.  (Bugg Dep. 141:4 – 12).  Sublett immediately reported the claim to Accident Fund.  (Sublett Aff. ¶ 70).

Accident Fund began investigating the claim.  (Filing No. 157-8, Deposition of Melissa Morley ("Morley Dep." at 22:5 – 25:13).  Melissa Morley, Accident Fund's claim manager, initially questioned whether the Second Policy covered the claim since Cope

11

lived, worked, and had suffered injuries in Kentucky.  (*Id.*).  Morley contacted the union

hall in Kentucky to obtain additional information about the Pilgrim's Pride project and

Custom Mechanical's Kentucky work in general.  (Filing No. 157-23, Affidavit of

Melissa Morley ("Morley Aff.") ¶¶ 3 – 5).  The union hall confirmed that Custom

Mechanical had hired Cope to work on the Pilgrim's pride project.  (*Id.*).  Morley then

called Bugg to discuss Custom Mechanical's work and confirmed Custom Mechanical

had performed work previously in Kentucky.  (Morley Dep. 29:22 – 31:16).

While Accident Fund was investigating, Sublett had several conversations with

Short about whether coverage existed.  (Filing No. 160-8, Sublett Dep. 212:24 – 213:19).

Sublett wanted to get a better idea of what transpired in Kentucky and explore whether

the Second Policy provided coverage.  (*Id.*).  According to Short, during one of these

conversations, Sublett told him to change the date of certain jobs that Custom Mechanical

had performed so that the Second Policy would cover the accident.  (Filing No. 160-4,

Short Dep. 76:9 – 77:19).  Short understood this to be insurance fraud, so he declined to

change the dates.  (*Id.*).  According to Sublett, he never told Short to change the date of

certain jobs.  (Sublett Dep. at 213:22 – 215:2).

## G.    Denial and Lawsuit

On November 11, 2016, Accident Fund denied coverage for the incident.  (Filing

No. 151-19, Denial Letter at 1).  Morley explained that the claim was denied because

Custom Mechanical failed to notify Accident Fund of its work in Kentucky:

> Under the terms of the policy, Custom Mechanical had the duty to notify
> Accident Fund with[in] 30 days of the effective date of the policy that work
> was occurring in Kentucky.  The effective date of the policy was 5/13/16 and

30 days thereafter would be 6/11/16. Custom Mechanical failed to notify Accident Fund of the work in Kentucky on the inception date of the policy, failed to notify within 30 days of the inception date of the policy, and failed to notify of the ongoing work in Kentucky. Based on the above section of the insuring agreement, there is no coverage for Custom Mechanical for any worker's compensation claim made arising out of work occurring in Kentucky as Custom Mechanical[] failed to provide the requisite notice of work in Kentucky.

(*Id.*).

Accident Fund filed this action on December 29, 2016. (Filing No. 1, Complaint). Accident Fund seeks a declaratory judgment that (1) the Second Policy does not provide primary coverage for the accident, and (2) the Second Policy does not provide other states coverage for the accident. (*Id.* ¶¶ 17 – 35). Custom Mechanical filed its counterclaims on January 22, 2018. (Filing No. 100, Second Amended Counterclaim). Custom Mechanical says Accident Fund breached the insurance policy by not covering the accident and did so in bad faith. (*Id.* ¶¶ 85 – 109).

Custom Mechanical also filed a third-party complaint against Schultheis. (Filing No. 21, Third Party Complaint). Custom Mechanical alleges Schultheis is liable for the failure to procure adequate insurance coverage and the failure to give proper advice. (*Id.* ¶¶ 77 – 127).

The court now faces cross-motions for summary judgment on Accident Fund's Complaint and Custom Mechanical's counterclaims. It also faces cross-motions for summary judgment on Custom Mechanical's Third-Party Complaint. Additional facts will be added as necessary.

## II.     Legal Standard

Rule 56 authorizes the court to grant summary judgment when there is no genuine

dispute as to any material fact and the moving party is entitled to judgment as a matter of

law.  Fed. R. Civ. P. 56(a); *Johnson v. Northeast School Corp.*, 972 F.3d 905, 911 (7th

Cir. 2020).  "[A] factual dispute is genuine when 'the evidence is such that a reasonable

jury could return a verdict for the nonmoving party.'"  *Carroll v. Lynch*, 698 F.3d 561,

564 (7th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Factual disputes that are irrelevant or unnecessary do not preclude summary judgment.

*Carroll*, 698 F.3d at 564.  The court views the facts in the light most favorable to the

nonmoving party.  *Johnson*, 972 F.3d at 911.  When resolving cross-motions for

summary judgment, the standard does not change: the court construes the facts and draws

all reasonable inferences from them in the light most favorable against whom the motion

is made.  *Markel Ins. Co.*, 954 F.3d at 1016.

Summary judgment is particularly appropriate for resolving issues of contract

interpretation.  *See e.g. E.T. Products, LLC v. D.E. Miller Holdings,* 872 F.3d 464 (7th

Cir. 2017) (applying Indiana law); *Illinois Farmers Ins. Co. v. Wiegand*, 808 N.E.2d 180,

184 (Ind. Ct. App. 2004) ( "The construction of an insurance contract is a question of law

for which summary judgment is particularly appropriate.") (Internal quotations and

citation omitted).[5]  The opposite is true with respect to negligence claims.  *See e.g. Hill v.

Gephart*, 54 N.E.3d 402, 406 (Ind. Ct. App. 2016) ("[S]ummary judgment is rarely

[5] The court has already determined Indiana law applies in this diversity case.  (*See* Filing No. 99,
Entry on Accident Fund's Motion to Dismiss at 6 – 8).

14

appropriate in negligence actions, since negligence cases are particularly fact sensitive.")
(internal quotations and citations omitted).

## III.   Discussion

There are two sets of cross-motions for summary judgment before the court.  The
first is between Accident Fund and Custom Mechanical.  This set of motions concern
whether the Second Policy provided coverage for the accident.  The second is between
Custom Mechanical and Schultheis.  This set concerns whether Sublett was negligent in
procuring coverage and failing to advise Custom Mechanical.  The court considers each
in turn.

### A.      The Second Policy Does Not Cover the Accident

An insurance policy is a contract, so whether the Second Policy provides coverage
is a matter of contract interpretation under Indiana law.  *Justice v. American Family Mut.
Ins. Co.*, 4 N.E.3d 1171, 1173 (Ind. 2014); *Franke Plating Works, Inc. v. Cincinnati. Ins.
Co.*, 113 N.E.3d 357, 266 (Ind. Ct. App. 2018).

The primary goal of contract interpretation is to determine the intent of the parties
at the time the contract was made.  *Empire Fire v. Frierson*, 49 N.E.3d 1075, 1079 (Ind.
Ct. App. 2016).  The court construes the contract as a whole and gives clear and
unambiguous terms their ordinary meaning.  *Franke*, 113 N.E.3d at 266 (citations
omitted).  If terms directly conflict or if reasonable people can disagree as to their
meaning, the contract is ambiguous.  *Id.*  Both interpretations must be reasonable.
*Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 244 (Ind. 2000) ("An ambiguity exists
where a provision is susceptible to more than one interpretation and reasonable persons

15

would differ as to its meaning.") (citations omitted).  The court construes ambiguous contracts against the party that drafted it, *Empire Fire*, 49 N.E.3d at 1079, or in the case of insurance policies, against the insurer.  *Franke*, 113 N.E.3d at 266.

As the court sees it, the Second Policy does not cover the accident.

*Primary Coverage*.  The accident is not covered by the Second Policy's primary coverage because the accident occurred in Kentucky, and primary coverage only exists in Indiana.  The policy is clear:

> **Item 3. Coverage**
>
> **A.** Workers Compensation Insurance: Part One of the policy applies to the Workers Compensation Law of the states listed here: IN

(Second Policy, Information Page at 6, Item 3A).  Custom Mechanical does not dispute this point.

*Other States Coverage*.  The accident is not covered by the Second Policy's other states coverage because Custom Mechanical did not provide Accident Fund with notice of its work in Kentucky.  True, this provision *can* cover accidents in Kentucky:

> Item 3. Coverage
>
> ***
>
> C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here: All states and U.S. territories except monopolistic states, Puerto Rico, the U.S. Virgin Islands, and states designated in Item 3. A. of the Information Page.

(*Id.* at 6, Item 3C) (formatting removed).  But this coverage only applies if certain notice requirements are met:

16

OTHER STATES INSURANCE

A.     How This Insurance Applies

1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information page.

3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy in any state not listed in Item 3.A. of the Information Page, coverage will not be afforded for that state *unless we are notified within thirty days*.

B.     Notice

Tell us *at once* if you begin work in any state listed in Item 3.C. of the Information Page.

(*Id.* at 14) (emphasis added) (formatting in original removed).  This provision essentially creates two requirements: Custom Mechanical must notify Accident Fund within thirty days of the effective date of the policy if it *has work* in Kentucky (under A.4.); or it must notify Accident Fund "at once" if it *begins work* in Kentucky (under B).  Coverage will not be afforded unless Accident Fund receives such notice.

Here, it is undisputed that Custom Mechanical failed to satisfy either notice requirement.  It "had" work on the effective date of the policy and "began" work in Kentucky during the policy period but neither Sublett nor anyone from Custom

17

Mechanical provided *any* notice of the work to Accident Fund.  Other states coverage therefore does not cover the accident.[6]

Custom Mechanical insists otherwise.  It contends it began work after the effective date of the policy and was not insured or self-insured, so "all provisions" of the Second Policy should "apply as though Kentucky were listed" as a state under "Section 3.A." (*See* Second Policy at 14).   Fair enough.  But that provision must be read in conjunction with the notice provisions two paragraphs later.  Custom Mechanical cannot read one provision of the policy and ignore others; the policy must be construed as a whole.  *Ryan v. Lawyers Title Ins. Corp.*, 959 N.E.2d 870, 875 (Ind. Ct. App. 2011).  And the policy makes clear that Accident Fund must receive notice of work outside of Indiana; otherwise, the policy does not apply.  *Cf. Woods v. Masonry, Inc. v. Monumental General Cas. Ins. Co.*, 198 F.Supp.2d 1016, 1028, 1045 (N.D. Iowa 2002) (identical "Other States Insurance" provision covered accident when insured gave proper notice to insurer).

Sensing the notice provisions are fatal to coverage, Custom Mechanical attacks both of them.  It first says the thirty-day notice provision is unenforceable because Accident Fund unilaterally backdated coverage.  But no evidence supports that

---

[6] The Department of Workers' Claims within the Kentucky Labor Cabinet determined that no workers' compensation policy was in effect for Custom Mechanical on the day of the accident. (*See* Filing No. 45-1, Letter from the Acting Commissioner).  The court previously took judicial notice of the fact that the letter and certification were filed in the administrative case but did not accept as true the facts contained within the letter.  (*See* Filing No. 64, Order Denying Custom Mechanical's Motion to Exclude); *see also Parungao v. Cmty. Health Sys.*, 858 F.3d 452, 457 (7th Cir. 2017).  The court declines to consider this letter here at summary judgment for two related reasons: 1) the court has reached the same conclusion as the Kentucky Labor Cabinet through the ordinary tools of contract construction, and 2) the parties did not brief how much deference (if any) is owed to the agency's letter.  Given those facts, the court does not reach the effect of this letter on the coverage issue in this case.

conclusion.  While it was Accident Fund's policy to cancel and re-write the policy, Sublett *agreed* to backdating the policy to May 13, 2016.  (*See* Sublett Dec., Ex. 5-1, Correspondence between Schultheis and Accident Fund).  It is disingenuous for Custom Mechanical to now assert it was a unilateral decision by Accident Fund, or that it *wanted* a policy which allowed for a gap in coverage, when its agent ultimately agreed to backdating the policy.

Custom Mechanical adds that it did not receive the Second Policy until June 10, 2016.  Under the terms of the policy, then, it only had a couple days to give notice, or else lose coverage under the other states provision.  Custom Mechanical says enforcement of this provision thus violates public policy because it takes more than a few days to read the policy and provide notice.  But the problem is not that Custom Mechanical provided notice late; the problem is that it *never* provided notice.  Custom Mechanical worked in Kentucky prior to the effective date of the Second Policy and at least twenty days between May 13 and October 24.  Had it provided *some* type of notice, the result might be different; however, given the realty that it never gave Accident Fund any notice, its public policy argument has no application here.

Custom Mechanical next attacks the "at once" notice provision.  It says the failure to provide notice "at once" after Custom Mechanical began work in Kentucky is inconsequential.  The policy, according to Custom Mechanical, only precludes coverage if a company fails to provide notice of *existing* work within thirty days of the policy's effective date; it does not preclude coverage if a company fails to provide notice of *new* work anytime during the policy period.  While this reading makes literal sense, the "at

19

once" notice requirement must be understood in context of the rest of the policy.  *Ryan*,
959 N.E.2d at 875; *Castleton Corner Owners Association, Inc. v. Conroad Associates,
L.P.*, No. 19A-PL-2687, 2020 WL 6375431, at *5 (Ind. Ct. App. Oct. 30, 2020).  This is
an Indiana workers' compensation policy.  It applies primarily to work in Indiana.  The
notice requirements are part of a secondary coverage option where Accident Fund will
cover incidental jobs outside of Indiana.  When read in context, the "at once" provision,
just like the thirty-day notice provision, is a condition that must be satisfied in order for
coverage to apply.  It makes no sense for Accident Fund to condition other states
coverage on one notice requirement but not the other.  That is the only sensible reading of
the policy.  *Allstate Ins. Co. v. United Farm Bureau Mut. Ins. Co.*, 618 N.E.2d 31, 33
(Ind. Ct. App. 1993) (the meaning of a contract must be ascertained from all of its
provisions, not from the literal or technical construction of an isolated clause).

Custom Mechanical protests that the "at once" provision is—at a minimum—
ambiguous.  According to Custom Mechanical, Accident Fund's own representative
"admitted" that this particular provision does not affect coverage:

> Q:   Is it your testimony that while the policy requires them to tell you at
> once, if you begin work in any state listed in Item 3C, if you fail to do
> so, what's the consequence of that?
>
> A:   The consequence would be if you're still there at the time of your
> renewal or your effective date, then there would be no coverage going
> forward. In the middle of a policy term, the coverage is afforded until
> the expiration date.

20

(Miller Dep. 100:25 – 101:9).[7]  But resorting to extrinsic evidence is only appropriate when the policy is ambiguous.  *BKCAP, LLC v. CAPTEC Franchise Trust 2000-1*, 572 F.3d 353, 359 (7th Cir. 2009) ("If the contract language is clear and unambiguous, the document is interpreted as a matter of law without looking to extrinsic evidence.") (citing *Automation by Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 753 – 54 (7th Cir. 2006) (applying Indiana law)).  Here, the policy—read as a whole—is unambiguous: coverage will only be afforded if Custom Mechanical notifies Accident Fund within thirty days of the effective date of the policy if it has work in another state, or at once if it begins work in another state.  The court therefore does not consider Miller's interpretation of the policy.

The Second Policy required Custom Mechanical to provide notice to Accident Fund in order for other states coverage to apply.  That did not happen.  The Second Policy therefore does not provide coverage.  Accident Fund's motion for summary judgment on its complaint will be **GRANTED**, and Custom Mechanical's motion for summary judgment on its counterclaims will be **DENIED**.  Because the Second Policy does not provide coverage, Accident Fund is entitled to summary judgment on Custom Mechanical's counterclaims (Filing No. 100) for breach of contract and bad faith.

---

[7] It is not clear this is what Miller actually meant.  Counsel's questions were somewhat confusing.  And Miller admitted that she did not know and understand a similar follow-up question.  (*Id.* at 101:12 – 25).  Nevertheless, the court construes her answer, as it must, in the light most favorable to Custom Mechanical.

### B.      A Jury Must Resolve Whether Schultheis was Negligent

Custom Mechanical alleges Schultheis committed negligence; made negligent

misrepresentations; violated Kentucky's Unfair or Deceptive Practices Act and Consumer

Protection Act; breached its fiduciary duty; and negligently supervised Sublett.  (Filing

No. 21, Third Party Complaint).  Custom Mechanical stipulated to the dismissal of its

breach of fiduciary duty and Kentucky statutory claims.  (*See* Filing No. 194).  Schultheis

now moves for summary judgment on the remaining claims: negligence, negligent

misrepresentation, and negligent supervision.

The court can dispense with the latter two claims fairly quickly.  Custom

Mechanical's negligent misrepresentation is nothing more than a repackaging of its

negligence claim.  Since there are no meaningful distinctions between the two, Schultheis

is entitled to summary judgment on Custom Mechanical's negligent misrepresentation

claim.  *See Darst v. Illinois Farmers Ins. Co.*, 716 N.E.2d 579, 584 – 85 (Ind. Ct. App.

1999) (summary judgment appropriate where plaintiff could not demonstrate a practical

difference between two claims).  As for the negligent supervision claim, Schultheis has

already admitted Sublett was acting in the scope of his employment, and Custom

Mechanical has not pointed to any "special circumstances" to support an independent

claim for negligent supervision.  *See Sedam v. 2JR Pizza Enterprises, LLC*, 84 N.E.3d

1174, 1176 – 79 (Ind. 2017) (an employer's admission that an employee was acting

within the scope of his employment ordinarily bars claims of negligent hiring, training, or

supervision absent special circumstances).  Schultheis is therefore entitled to summary

judgment on this claim too.

As for Custom Mechanical's negligence claim, questions of fact preclude summary judgment in either party's favor.  Insurance agents ordinarily must exercise a duty of reasonable care when obtaining insurance for their clients.  *See Craven v. State Farm Mut. Auto. Ins. Co.*, 588 N.E.2d 1294, 1297 – 98 (Ind. Ct. App. 1999).  Where a special, long-term relationship exists between the parties, the agent's duty to exercise reasonable care includes the duty to adequately advise an insured of its coverage needs.  *Myers v. Yoder*, 921 N.E.2d 880, 885 (Ind. 2010).  Failure to obtain adequate coverage or failure to adequately advise an insured of his needs may constitute a breach of the agent's duty.  *See e.g. United Farm Bureau Mut. Ins. Co. v. Cook*, 463 N.E.2d 522, 528 – 29 (Ind. Ct. App. 1984).

Here, a reasonable jury could find that Schultheis was negligent under both theories: Sublett breached his duty to exercise reasonable care in obtaining adequate coverage for Custom Mechanical, and he failed to adequately advise Custom Mechanical of its insurance needs.  Sublett has advised Custom Mechanical on insurance coverage since 2005, (Titzer Dep. 11:24 – 12:4), and he met with Custom Mechanical's owners multiple times each year to discuss coverage.  (Titzer Dep. 15:2 – 21; Short Dep. 18:4 – 19:18; Cole Dep. 23:21 – 24:14).  Sublett unilaterally suggested switching insurance carriers in 2015 and advertised Accident Fund as the better option.  (Sublett Dep. 69:20 – 70:9; E-mail from Sublett to Bugg).  Sublett knew that Custom Mechanical had performed work in Kentucky since as early as 2010, (Sublett Aff., Ex. 3D, Sublett Correspondence with Midwestern), yet in both applications submitted to Accident Fund, he represented Custom Mechanical's employees did not leave the state of Indiana.

23

(Accident Fund Application for Insurance at 4).  In fact, he never provided any notice to Accident Fund that Custom Mechanical performed work in Kentucky.  (Sublett Dep. 228:19 – 230:21).  Short and Cole admitted they "did not know insurance", (Short Dep. 67:25 – 68:5), and told Sublett they appreciated his "insight and expertise" and would listen to "any suggestion."  (*See* Filing No. 160-12, Affidavit of Carl Cole ¶ 6).  With respect to the Second Policy, Sublett told them coverage with the Accident Fund was "apples to apples" compared to the previous policy with Midwestern.  (Filing No. 160-13, Affidavit of Kevin Short ¶ 20).  And after the accident occurred, Sublett showed a guilty conscience: he instructed Short to change the dates of certain jobs so that the Second Policy would appear to cover the accident.  (Short Dep. 76:9 – 77:19).

From all this, a reasonable jury could conclude Sublett did not adequately obtain insurance coverage for Custom Mechanical; he should have either obtained primary coverage for Kentucky or given Accident Fund notice of Custom Mechanical's work in Kentucky.  A jury could also conclude that Sublett should have advised Custom Mechanical that it needed primary coverage in Kentucky given its work there.  His failure to do either one, a jury could find, constitutes a breach of his duty as an insurance agent. *See e.g. Cook*, 463 N.E.2d at 522.

However, a reasonable jury could also conclude otherwise.  Custom Mechanical performed work in Kentucky, (*see* Custom Mechanical's Kentucky Job Chart; Cole Dep. 12:23 – 13:24; Short Dep. 12:5 – 19), yet none of its principals ever requested primary coverage there.  (Titzer Dep. 22:16 – 19; 58:13 – 14; Bugg Dep. 32:23 – 33:14; Short Dep. 12:5 – 19; Cole Dep. 29:5 – 30:8).  Short and Cole wanted to expand work in

24

Kentucky, (Short Dep. 70:23 – 71:13), but they requested the "same coverage" as before and did not ask Sublett to explain the difference between primary coverage and other states coverage. (Sublett Aff. ¶ 66). Neither one even read the Second Policy. (Short Dep. 36:21 – 37:8; 39:1 – 20; Cole Dep. 40:22 – 41:7). Despite performing work in Kentucky on thirty-one different days between May 13 and October 24 in 2016, (*see* Custom Mechanical's Kentucky Job Chart), no one from Custom Mechanical told Sublett about Custom Mechanical's work in Kentucky. (Sublett Dep. 230:10 – 15) (explaining he did not know Custom Mechanical had employees in Kentucky until the accident). Furthermore, the Second Policy contains similar other states coverage as compared to the previous Midwestern Policy. (*See* Second Policy at 6). Given all this, a jury could reasonably conclude that Sublett held up his end of the bargain: he adequately obtained the coverage that was requested and properly advised Short and Cole. The fault lies with Custom Mechanical's principals for not requesting primary coverage in Kentucky or notifying him of their work there. *See Filip v. Block*, 879 N.E.2d 1076, 1085 – 86 (Ind. 2008).

Because a jury could find in favor of either party, the court cannot decide the two negligence questions as a matter of law. *See e.g. Morgan v. Tackitt Ins. Agency, Inc.*, 852 N.E.2d 994, 1001 (Ind. Ct. App. 2006).

Both parties object, but none of their arguments is persuasive.

Custom Mechanical insists the court should rule that Sublett negligently procured coverage and failed to advise Short and Cole as a matter of law. But negligence cases,

like the one here, are too fact sensitive to decide as a matter of law; these arguments are better suited for the jury. *See Hill*, 54 N.E.3d at 406.

Schultheis, for its part, argues that it did not breach the duty to procure insurance as a matter of law because Sublett obtained the insurance Short and Cole actually requested. But a jury could look at the evidence and conclude failing to get primary coverage in Kentucky—or at least notify Accident Fund of Custom Mechanical's work in Kentucky—fell below the proper standard of care, especially if it believes Short and Cole were not experts in insurance and Sublett knew of Custom Mechanical's work in Kentucky. (*See* Sublett Aff., Ex. 3D, Sublett Correspondence with Midwestern).

Schultheis next argues Custom Mechanical's claim with respect to procuring coverage is barred by the statute of limitations. *See Filip*, 879 N.E.2d at 1082. Not so. Custom Mechanical's claim stems from Sublett's actions taken with respect to the Second Policy, which was effective on May 13, 2016. Custom Mechanical filed its Third-Party Complaint on February 24, 2017, well within the two-year statute of limitations. *See* Ind. Code § 34-11-2-4(a).

Schultheis finally argues Sublett did not owe a duty to advise Custom Mechanical as a matter of law because there was no "special relationship" between Sublett and Custom Mechanical. *See Indiana Restorative Dentistry, P.C. v. Laven Ins. Agency, Inc.*, 27 N.E.3d 260, 265 (Ind. 2015) (duty to advise only arises when a "special relationship" exists). But a jury could reasonably conclude such a "special relationship" exists, especially considering Sublett served as Custom Mechanical's insurance agent for more than 10 years, met three to four times a year with its management to discuss coverage,

26

held himself out as an expert, and affirmatively sought out cheaper policies. *See Cook*, 463 N.E.2d at 528 – 29. The court cannot say a "special relationship" did not exist as a matter of law, so a jury must decide this issue. *Indiana Restorative Dentistry*, 27 N.E.3d at 265 – 67 (noting existence of special relationship is a mixed question of law and fact).

In short, the question of whether Sublett was negligent is a question a jury must decide. *See e.g. Morgan*, 852 N.E.2d at 1001.

## IV.    Conclusion

For the reasons above, the Second Policy does not cover the Cope accident either through the primary coverage provision in the policy (Item 3.A) or the other states provision in the policy (Item 3.C). Accident Fund's Motions for Summary Judgment (Filing Nos. 155 and 185) are therefore **GRANTED**. Accident Fund is also entitled to summary judgment on Custom Mechanical's two counterclaims for breach of contract. (Filing No. 100). Custom Mechanical's Motion for Summary Judgment against Accident Fund (Filing No. 149) is **DENIED**.

With respect to the claims between Schultheis and Custom Mechanical, Schultheis's Motion for Summary Judgment (Filing No. 152) is **GRANTED in PART** and **DENIED in PART**, and Custom Mechanical's Motion for Summary Judgment against Schultheis (Filing No. 158) is **DENIED**.

Schultheis is entitled to summary judgment on Custom Mechanical's claims of negligent misrepresentation and negligent supervision.  However, questions of fact preclude summary judgment in either party's favor on Custom Mechanical's claims of negligent procurement and failure to advise.

**SO ORDERED** this 30th day of November 2020.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.